**\*\*\* FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER \*\*\***

**Electronically Filed
Supreme Court
SCWC-16-0000123
09-JAN-2020
08:12 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

ONEWEST BANK, F.S.B.,
Respondent/Plaintiff-Appellant,

vs.

THE ASSOCIATION OF THE OWNERS OF THE KUMULANI AT THE UPLANDS AT
MAUNA KEA, an unincorporated association,
Petitioner/Defendant-Appellee,

and

DIANA G. BROWN; D. MICHAEL DUNNE, SUCCESSOR TRUSTEE OF THE
REVOCABLE LIVING TRUST OF HAROLD G. STRAND AND MARGARET M.
STRAND; JERRY IVY; OMNI FINANCIAL, INC.; CITIBANK (SOUTH
DAKOTA), N.A.,
Respondents/Defendants-Appellees.

_____

SCWC-16-0000123

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000123; CIVIL NO. 11-1-410K)

January 9, 2020

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY WILSON, J.

In response to a pair of post-judgment motions filed

in this foreclosure case, the Circuit Court of the Third Circuit

("circuit court") filed two orders. The first found Respondent/Plaintiff-Appellant OneWest Bank, F.S.B. ("OneWest"), the foreclosing mortgagee and winning bidder at the foreclosure auction, liable for damages in an amount equal to its down payment for its failure to close the foreclosure sale. The second awarded that down payment amount as expectation damages to Petitioner/Defendant-Appellee the Association of the Owners of the Kumulani at the Uplands at Mauna Kea ("the Association"), a junior lienholder. Because creditors in a judicial foreclosure action are "entitled to payment according to the priority of their liens," Hawai'i Revised Statutes ("HRS") § 667-3 (2016), we hold that the circuit court abused its discretion by awarding damages to the Association, rather than by applying the down payment amount to reduce the debt owed to OneWest.

## I.   BACKGROUND

### A.  Circuit Court Proceedings

#### 1.  Foreclosure Action, Auctions, and Confirmation of Sale

On September 23, 2011, OneWest commenced a judicial foreclosure action by filing a complaint in the circuit court. OneWest alleged that Diana G. Brown ("Brown") had defaulted on a $548,000.00 note and mortgage assigned to OneWest that covered Brown's fee simple interest in an apartment in a condominium

2

project called the Kumulani at the Uplands at Mauna Kea.[1]

OneWest alleged that Brown was in breach of the note and mortgage, and that it was entitled to foreclosure of the mortgage, payment from the sale of the mortgaged property, and monetary judgment against Brown.

On October 21, 2011, the Association, one of the defendants in the foreclosure action, filed its answer. The Association claimed that it had "a lien for all sums assessed but unpaid for the share of common expenses chargeable to the subject property" under HRS § 514B-146(a) (Supp. 2011). It asked that the circuit court determine the priority of the parties' claims, but did not ask for any other relief except for reasonable attorneys' fees and costs and further relief as the court deemed just and equitable.

On July 5, 2013, OneWest moved for summary judgment against the Association and for an order for an interlocutory

---

[1] OneWest also named as defendants D. Michael Dunne, successor trustee of the revocable living trust of Harold G. Strand and Margaret M. Strand; Jerry Ivy; Omni Financial, Inc.; Citibank (South Dakota), N.A.; the Association; and various John Does and Doe entities "who have or may claim some right, title or interest in the property which is the subject of this action." OneWest stated that the other named defendants "may have or claim an interest in the Mortgaged Property," but that any of these interests were junior to its own.

Defendants Brown, Dunne, Ivy, Omni Financial, and Citibank failed to plead or otherwise defend their claims and defaults were entered against them on August 6, 2012. In its July 5, 2013 motion, discussed below, OneWest moved for entry of default judgment against all the defaulted defendants. That part of the motion was granted in the circuit court's June 3, 2014 order. Nonetheless, Brown later filed memoranda in opposition to some of the post-judgment motions in this case.

decree of foreclosure.  At an August 26, 2013 hearing on this motion,[2] the circuit court found that OneWest's delay in initiating the proceedings constituted laches and allowed it to collect only the remaining principal amount of the mortgage, two years interest at a rate of seven percent, and pre-acceleration late charges.  It barred OneWest from collecting any additional interest, escrow advances and taxes, property preservation fees, property inspection fees, broker price opinion fees, or appraisal fees.  The total amount it permitted OneWest to collect was $581,972.26.

On June 3, 2014, the circuit court filed its findings of fact, conclusions of law, and order granting OneWest's summary judgment motion.  It directed that the summary judgment and interlocutory decree of foreclosure requested by OneWest be entered as a final judgment to OneWest's complaint.  It foreclosed on the mortgage and appointed a commissioner to take possession of the property and to sell it, and expressly "reserve[d] jurisdiction to determine the party or parties to whom any surplus shall be awarded."  The court's order authorized OneWest and all other parties to purchase the property, requiring the successful bidder to make a down payment of no less than ten percent of the highest successful bid price,

_____

[2]      The Honorable Elizabeth A. Strance presided.

4

but providing that OneWest could satisfy the down payment by way of offset up to the amount of its secured debt if it was the purchaser, and ordering that "[a]t the Court's discretion, the ten percent (10%) down payment may be forfeited in full or in part if the purchaser fails to pay the balance of the purchase price as hereinafter set forth." It provided further that "[i]n no event shall the purchaser be liable for damages greater than the forfeiture of the ten percent (10%) down payment." The circuit court's judgment was filed the same day.

At the first public auction of the property, held on August 11, 2014, the property was sold to a couple, the only bidding party, for $50,000.00, subject to confirmation by the circuit court. OneWest filed a motion to re-open bidding, which the court granted on October 31, 2014. At the second auction, held on December 9, 2014, the property was sold to OneWest, the highest bidder, for $815,098.42, subject to confirmation by the circuit court.

On January 12, 2015, OneWest filed a motion for an order confirming the foreclosure sale and directing conveyance. On March 6, 2015, the circuit court filed an order granting OneWest's motion. The court approved the sale of the property to OneWest at the offered price of $815,098.42, and required that the closing date be within 35 days of the filing of its order—that is, on or before April 10, 2015. The court approved

payments from the sale in the following order: to the commissioner, to OneWest, to the Association, and to the escrow account for the closing of the sale, with any remainder to Brown. Pursuant to the order, final judgment was entered in favor of OneWest on March 27, 2015.

However, OneWest refused to close the sale by the court-ordered date of April 10, 2015. OneWest's failure to comply with the March 6, 2015 order led to the filing of two motions in May 2015. The first motion was the Association's May 12, 2015 "Motion for an Order to Show Cause and for Civil Contempt and for Other Relief[.]" The Association's motion resulted in an order on July 24, 2015 holding OneWest liable for damages. The second motion was OneWest's May 21, 2015 "Motion for an Order (1) Vacating Order Confirming the Foreclosure Sale Filed March 6, 2015; (2) Determining Deductions to Plaintiff's Credit Bid Deposit; (3) Reopening Bid at Hearing on Motion; (4) Confirming Sale to Plaintiff at Adjusted Credit Bid Amount; (5) for Other HRCP Rule 60(b) Relief; Alternatively (6) Instructing Commissioner to Conduct a New Auction[.]" OneWest's motion was ultimately denied on September 22, 2015 in an order that required OneWest to pay damages to the Association. The award of damages to the Association is at issue in this appeal.

## 2. The Association's Motion for an Order to Show Cause

On May 12, 2015, the Association filed a motion for an order for OneWest to show cause why it had refused to comply with the court's March 6, 2015 order and why it should not be held in civil contempt for its refusal. The Association also moved for an order that another public auction on the property be held and that OneWest be required to pay the commissioner the difference between its winning bid at the December 9, 2014 auction and the winning bid obtained at the new auction. It also requested that OneWest pay the Association accrued fees and dues on the property, the Association's attorneys' fees and costs, post judgment interest on OneWest's bid, all costs of the prior and requested future sale, and amounts paid to the commissioner as rental proceeds. In the alternative, it requested that specific compliance be enforced against OneWest.

In its memorandum supporting the motion, the Association argued that if the court chose not to hold a new sale and determined that OneWest's damages should be limited to $81,509.84 (because the court's June 3, 2014 order required damages to be limited to the down payment amount of ten percent of the purchase price), the court should specifically enforce OneWest's compliance with the sales contract and make OneWest pay the Association all the fees, costs, interest, and proceeds the Association was requesting.

7

On July 24, 2015, the circuit court filed its order granting in part and denying in part the Association's motion. It denied the Association's request for a third auction, required OneWest to pay the Association's accrued monthly fees and dues, and held that OneWest was liable for $81,509.84 in damages, "with disposition of said amount subject to further order of the Court[.]"

### 3. OneWest's HRCP Rule 60(b) Motion

On May 21, 2015, shortly after the Association filed its motion for an order to show cause, OneWest, pursuant to Hawai'i Rules of Civil Procedure ("HRCP") Rule 60(b) (2006), moved for an order vacating the March 6, 2015 order confirming the foreclosure sale, determining deductions to its credit bid deposit, reopening bidding at the hearing on the motion, confirming the sale to OneWest at the adjusted credit bid amount, and for other relief, or, in the alternative, for instructions to the commissioner to hold a new auction.

The crux of OneWest's argument was that, at the time of its $815,098.42 bid, it mistakenly believed that when the court stated in its October 31, 2014 order re-opening bidding that OneWest would not be entitled to a deficiency judgment, it meant that OneWest would not have to pay excess proceeds to junior lienholders if it made a bid equal to the total amount of the debt. OneWest stated that if it had realized that the June

8

3, 2014 decree of foreclosure, which limited its recovery on the debt to $581,972.26, had "fixed" its credit bid at that amount, it would have bid $581,972.26, and still won the auction, rather than overbidding at $815,098.42. OneWest claimed that under this alternative scenario, where it made a bid equal to the total amount of the debt, it would not have had any surplus proceeds and would not have been required to pay the Association condominium dues and expenses that were not reduced to a final judgment. OneWest asked the court to hold a hearing to re-open the bidding and allow it to submit a reduced bid, and asked that the court limit its damages only to actual damages caused by its delay.

On June 5, 2015, the Association filed its memorandum in opposition to OneWest's HRCP Rule 60(b) motion. The Association argued that the orders recognizing its claims should not be disturbed and that ten percent of OneWest's bid amount should be distributed to the Association as damages suffered from OneWest's breach of its contract to buy the property.

The Association's argument that it was entitled to ten percent of OneWest's bid amount (i.e., $81,509.84) was as follows. The court's July 24, 2015 order on the Association's motion held that OneWest was liable for $81,509.84 in damages because of its breach of the sales contract and that disposition of the damages would be subject to further order of the court.

9

The Association had expectation damages of $116,011.95 that it would have received from the surplus sales proceeds if OneWest had closed at $815,098.42, plus additional costs and fees incurred as a result of OneWest's default. Thus, the $81,509.84 that OneWest was ordered to pay in damages should be paid towards the Association's expectation damages. OneWest itself was not entitled to receipt of that amount because the default and all damages were solely its fault.

At a hearing on the motion,[3] the court made it clear that the sale was not going to close and that a new foreclosure action would be necessary, stating, "It's not gonna close. It hasn't closed within time period. The plaintiff's gonna have to file a new foreclosure action. That's what they're gonna have to do."

On September 22, 2015, the circuit court filed its order denying OneWest's May 21, 2015 motion. It held that the motion was not timely filed, so OneWest was not entitled to any relief under HRCP Rule 60. It held further that, even if the motion was considered timely filed, there was no basis for HRCP Rule 60 relief, and that OneWest had unclean hands due to delays in the case. It held that OneWest was liable for $81,509.84 in damages, and ordered that it pay $8.00 in escrow fees and

---

[3] The Honorable Melvin H. Fujino presided.

10

$81,501.84 to the Association "to be regarded as partial satisfaction of the Association's damages and partial satisfaction of the Association's lien on the Property."

On October 2, 2015, OneWest filed a motion for reconsideration of the circuit court's September 22, 2015 order, which the court denied. OneWest appealed the March 6, 2015 order confirming the foreclosure sale, the March 27, 2015 final judgment, and the February 12, 2016 order denying its motion for reconsideration to the Intermediate Court of Appeals ("ICA").

**B. ICA Proceedings**

In its opening brief before the ICA, OneWest identified four points of error, only one of which was ultimately decided in its favor. That point of error concerned the circuit court's jurisdiction to assess damages against OneWest and award them to the Association:

> The circuit court erred in denying [OneWest's] motion for reconsideration, and relatedly its motion to vacate, because the circuit court lacked subject matter jurisdiction to award the [Association] damages since the [Association] never filed any affirmative pleading sufficient to be awarded damages, and, alternatively, the [Association] presented no evidence of any damages *caused* by non-completion of the foreclosure sale.

The ICA held that OneWest's argument that the circuit court erred in entering damages awards against OneWest in the September 22, 2015 order denying HRCP Rule 60(b) relief had merit. OneWest Bank, F.S.B. v. Brown, No. CAAP-16-0000123, 2018 WL 2433688, at *5 (App. May 30, 2018) (SDO). The ICA noted that

11

it had previously "held that a successful bidder at a judicial foreclosure sale submits himself or herself to the jurisdiction of the circuit court and is subject to subsequent enforcement orders by the circuit court upon entry of an order confirming the sale." Id. (citing First Hawaiian Bank v. Timothy, 96 Hawai'i 348, 357, 31 P.3d 205, 214 (App. 2001); HRS §§ 603-21.7(1)(c), 603-21.9(1) (2016)). It held that the circuit court erred in granting damages to the Association in its September 22, 2015 order because the issue was not properly before it:

> In this case, the issue of OneWest Bank's potential liability for damages was before the Circuit Court in conjunction with the Association's post-judgment motion that resulted in the July 24, 2015 Order on Motion to Show Cause, which is not before the court on this appeal. However, the issue of the amount of damages incurred by the Association was not properly before the Circuit Court in conjunction with OneWest Bank's post-judgment motion for HRCP Rule 60(b) relief from the Judgment on Foreclosure Decree and the Judgment on Confirmation Order, as there were no damages awarded against OneWest in those judgments, or their respective underlying orders. OneWest Bank's motion sought to limit the amount forfeited from its credit bid deposit. Thus, we conclude that the Circuit Court erred in the Order Denying the Rule 60(b) Motion, in finding that OneWest Bank is liable for payment of damages to the Association, and that the Association has incurred damages in a certain amount, and ordering OneWest Bank to pay damages to the Association.

Id. (footnote omitted).

The ICA ordered paragraphs e, g, and 9 stricken from the circuit court's September 22, 2015 order.[4] Id. Those paragraphs read:

_____

[4] The ICA's original summary disposition order ("SDO") also struck paragraph 7 of the circuit court's order, which read: "Plaintiff's request

(continued . . .)

12

> e. Plaintiff is liable for payment of $81,509.84 in damages;
>
> . . .
>
> g. The Association has incurred damages of $116,011.95 due to Plaintiff's failure to complete the sale of the property foreclosed upon in this action (the "Property").
>
> . . . .
>
> 9. Plaintiff shall pay to the Association forthwith the sum of $81,501.84 for damages suffered by the Association and said amount shall be regarded as partial satisfaction of the Association's damages and partial satisfaction of the Association's lien on the Property.

The ICA stated that its ruling "should not be construed as a ruling on the merits of an award of damages against OneWest Bank and is without prejudice to any relief granted in conjunction with the Order on Motion to Show Cause or any other such proceedings." Id. at *5 n.5.

The ICA affirmed in part and reversed in part the September 22, 2015 order denying OneWest's HRCP Rule 60(b) motion, affirming the entire order except for the three paragraphs relating to damages that it struck. Id. at *7.

C. Supreme Court Proceedings

The Association filed an application for writ of certiorari with this court, requesting that we reverse the

---

(. . . continued)

that it be required to forfeit only $12,130.80 of its 10% credit bid amount of $81,509.84, is denied." The ICA removed this part of the SDO after the Association moved for reconsideration, and issued an amended SDO that did not strike paragraph 7 of the order.

13

portions of the ICA's opinion that struck paragraphs e, g, and 9 from the September 22, 2015 order.  It presented the following two questions in its application:

> A.  Whether the ICA gravely erred in holding that the Circuit Court improperly decided the issues of the amount of damages incurred by the Association and OneWest Bank's liability for said damages where OneWest Bank's Motion specifically raised and asked the Circuit Court to decide these issues.

> B.  Whether the ICA gravely erred in holding that the Circuit Court could not decide issues in the September 22, 2015 Order that were not previously addressed in the prior Judgment on Foreclosure Decree and Judgment on Confirmation Order.

## II.  STANDARD OF REVIEW

"An appellate court reviews a circuit court's determination of an HRCP Rule 60 motion for an abuse of discretion."  Buscher v. Boning, 114 Hawai'i 202, 211, 159 P.3d 814, 823 (2007) (quoting Amantiad v. Odum, 90 Hawai'i 152, 158, 977 P.2d 160, 166 (1999)).  "An abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant."  Id. (brackets omitted) (quoting Office of Hawaiian Affairs v. State, 110 Hawai'i 338, 351, 133 P.3d 767, 780 (2006)).

## III.  DISCUSSION

The first question we consider is whether the ICA erred when it held that the issue of OneWest's liability for

14

damages was not properly before the circuit court in conjunction with OneWest's May 21, 2015 motion for HRCP Rule 60(b) relief. We conclude that the ICA did err in this regard. Having so concluded, we next consider whether the circuit court abused its discretion by finding OneWest liable to the Association in the amount of $81,501.94. We conclude that this was an abuse of its discretion, and that the amount should have been applied as a reduction to Brown's debt to OneWest, the mortgagee, rather than awarded as damages to the Association, a junior lienholder. Therefore, we affirm in part and vacate in part the ICA's judgment striking the damages paragraphs from the circuit court's September 22, 2015 order on OneWest's motion for HRCP Rule 60(b) relief.

**A.   The ICA erred in holding that the issue of damages was not properly before the circuit court when the circuit court issued its September 22, 2015 order on OneWest's HRCP Rule 60(b) motion.**

The first of the two post-judgment orders the circuit court filed was its July 24, 2015 order granting in part and denying in part the Association's motion for an order to show cause, for civil contempt against OneWest, and for other relief. That order denied most of the Association's requests, but did order that OneWest pay the Association $11,791.12 in accrued monthly fees and dues and held that OneWest was "liable for $81,509.84 or ten percent (10%) of its bid price of $815,098.42

15

as damages, <u>with disposition of said amount subject to further order of the Court</u>[.]"  (Emphasis added.)

The circuit court was acting within its discretion when it held OneWest liable for its failure to close the foreclosure sale by the court-ordered deadline.  The June 3, 2014 foreclosure order required the successful bidder at the foreclosure sale to "make a down payment to the Commissioner in an amount not less than ten percent (10%) of the highest successful bid price," providing that OneWest could satisfy the down payment by way of offset up to the amount of its secured debt, and ordered that "[a]t the Court's discretion, the ten percent (10%) down payment may be forfeited in full or in part if the purchaser fails to pay the balance of the purchase price[.]"  OneWest was the highest bidder at the second auction of the property on December 9, 2014 with a bid of $815,098.42.  The March 6, 2015 order confirming sale ordered the sale of the property to OneWest at its offered price of $815,098.42.  And in the order on the Association's post-judgment motion, the circuit court found that OneWest had refused to complete the sale and was "a defaulting purchaser in breach of the sales contract and . . . liable for damages arising from its default."

In judicial sales, "[t]he confirmation of sale is the equivalent of a valid contract of sale[,]" and the "application of contract law is appropriate[.]"  <u>First Tr. Co. of Hilo v.</u>

16

Reinhardt, 3 Haw. App. 589, 592, 655 P.2d 891, 893 (1982). Here, OneWest breached the confirmation of sale "contract" by refusing to complete the sale. It is "a basic precept of contract law . . . that a party who sustains a loss by the breach of another is entitled to compensation that will 'actually or as precisely as possible compensate the injured party.'" Hi Kai Inv., Ltd. v. Aloha Futons Beds & Waterbeds, Inc., 84 Hawai'i 75, 80-81, 929 P.2d 88, 93-94 (1996) (quoting Amfac v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 128, 839 P.2d 10, 32 (1992)).

Following the filing of the order on the Association's show cause motion, the circuit court filed its order denying OneWest's HRCP Rule 60(b) motion on September 22, 2015. That second post-judgment order included a finding of fact that OneWest was "liable for payment of $81,509.84 in damages[.]" Presumably, this finding was based on the circuit court's prior order, which imposed the liability on OneWest. Further finding that "[t]he Association has incurred damages of $116,011.95 due to Plaintiff's failure to complete the sale of the property foreclosed upon in this action[,]" the circuit court then ordered that OneWest "shall pay to the Association forthwith the sum of $81,501.84 for damages suffered by the Association and said amount shall be regarded as partial satisfaction of the

17

Association's damages and partial satisfaction of the Association's lien on the Property."

Contrary to the ICA's holding, the issue of damages was "properly before the Circuit Court in conjunction with OneWest Bank's post-judgment motion for HRCP Rule 60(b) relief[,]" OneWest, 2018 WL 2433688, at *5, because its order on the Association's show cause motion was written explicitly to allow for "disposition of said amount subject to further order of the Court."  In other words, the further disposition of the amount discussed in the court's order on the Association's motion was included in its order on OneWest's motion.

It was not an abuse of the circuit court's discretion for it to delay the order specifying the party to whom the damages would be paid.  In a judicial foreclosure action, the circuit court has broad discretion to order execution on its own judgments.  See HRS § 667-1.5 (2016).  And the circuit courts generally have discretion in civil actions to make such orders "as may be necessary to carry into full effect the powers which are or shall be given to them by law or for the promotion of justice in matters pending before them."  HRS § 603-21.9(6) (2016); see Timothy, 96 Hawai'i at 357, 31 P.3d at 214 (holding that "the circuit court in this case was statutorily authorized, in aid of its original jurisdiction over mortgage foreclosure actions, to enter appropriate orders against [the purchaser]

18

after he defaulted on his agreement to purchase the mortgaged property at the foreclosure sale").

It was a reasonable exercise of the circuit court's discretion for it to delay the award of damages until after it had ruled on OneWest's motion, the outcome of which might have affected who was entitled to damages. There was nothing requiring the circuit court to issue a separate order deciding which party should receive the damages. In fact, OneWest, apparently recognizing that denial of its request for HRCP Rule 60(b) relief would have left it liable for damages for breach of the foreclosure sale contract, made arguments about the issue of its liability in its post-judgment motion. It is true that "[a] Rule 60(b) motion for reconsideration is not a vehicle for introducing entirely new claims into an action." Stoller v. Marsh, 682 F.2d 971, 981 (D.C. Cir. 1982) (referring to the corresponding federal rule). But in this case, the damages issue was not new; the circuit court created the condition that led to liability for damages when it set the terms of the sale, and OneWest set in motion the liability analysis when it failed to close the court-ordered sale.

**B. It was abuse of discretion for the circuit court to award damages to the Association.**

Although it was within the circuit court's discretion to award damages in its September 22, 2015 order on OneWest's

19

HRCP Rule 60(b) motion, we hold further that its decision to award those damages to the Association was an abuse of its discretion.

It is a general principle of mortgage law that "[t]he mortgagee with first lien priority is entitled to recover the mortgage and all associated costs and fees according to the terms of the mortgage agreement, from the proceeds of the foreclosure sale before the mortgagee with second lien priority could recover its mortgage, fees, and associated costs[.]" 55 Am. Jur. 2d Mortgages § 705 (2019). To that end, the Hawai'i statute controlling the distribution of proceeds in judicial foreclosure sales provides that "[m]ortgage and other creditors shall be entitled to payment according to the priority of their liens[.]" HRS § 667-3. This statute prevents the circuit court from distributing the proceeds of a foreclosure sale to a junior lienholder, rather than the foreclosing mortgagee, before the first lien is fully satisfied. Fujii v. Osborne, 67 Haw. 322, 323, 687 P.2d 1333, 1335 (1984) ("Under HRS § 667–3, a circuit court lacks power to terminate a valid and subsisting first mortgage lien in a foreclosure action and order the proceeds of a foreclosure sale paid to the second mortgagee, rather than the first, without the consent of the first mortgagee.") By its plain language, HRS § 667-3 applies to the down payment ordered by the circuit court in this case. Thus, the circuit court

20

violated HRS § 667-3 by allowing the Association, a junior lienholder, to recover the down payment as damages.

Although this case involved the judicial foreclosure process, governed by Part I of HRS Chapter 667, our holding is consistent with the more recently enacted and more detailed statutory provisions regarding the nonjudicial foreclosure process, governed by Part II. See Timothy, 96 Hawai'i at 356 n.8, 31 P.3d at 213 n.8 (noting that Part II "establishes a much more detailed process for foreclosing upon a mortgage than part I"); Lee v. HSBC Bank USA, 121 Hawai'i 287, 292 n.4, 218 P.3d 775, 780 n.4 (2009) ("The legislative history behind this alternative process gives some insight into the purposes behind HRS section 667-5."); Kondaur Capital Corp. v. Matsuyoshi, 136 Hawai'i 227, 238, 361 P.3d 454, 465 (2015) (citing a presumption in a section in Part II as evidence that the legislature could have fashioned a similar presumption for judicial foreclosures). Part II expressly provides that "the successful bidder at the public sale, as the purchaser, shall make a nonrefundable downpayment to the foreclosing mortgagee of not less than ten per cent of the highest successful bid price[,]" and that "[i]f the successful bidder is the foreclosing mortgagee . . . , the downpayment requirement may be satisfied by offset and a credit bid up to the amount of the mortgage debt." HRS § 667-29 (2016) (emphasis added). It further provides that the down payment of

21

a defaulting purchaser goes to the foreclosing mortgagee before

another lienholder damaged by the breach:

> If the successful bidder later fails to comply with the terms and conditions of the public sale or fails to complete the purchase within forty-five days after the public sale is held, the downpayment shall be forfeited by that bidder. The forfeited downpayment shall be credited by the foreclosing mortgagee first towards the foreclosing mortgagee's attorney's fees and costs, then towards the fees and costs of the power of sale foreclosure, and any balance towards the moneys owed to the foreclosing mortgagee. The foreclosing mortgagee, in its discretion, may then accept the bid of the next highest bidder who meets the requirements of the terms and conditions of the public sale or may begin the public sale process again.

HRS § 667-30 (2016).

In its memorandum in opposition to OneWest's HRCP Rule

60(b) motion, the Association cited Timothy in support of its

argument that it should receive distribution of the down payment

for damages suffered. In that case, the Association noted, the

ICA approved of the circuit court awarding First Hawaiian Bank

("FHB") benefit of the bargain damages even though FHB was not a

party to the sales contract because the property was sold to a

third-party bidder. See Timothy, 96 Hawai'i at 363, 31 P.3d at

220. But FHB was the foreclosing mortgagee in Timothy, id. at

351, 31 P.3d at 208, and was entitled to damages resulting from

a breach of the foreclosure sale contract by the third-party

purchaser. In fact, in Timothy, the third-party purchaser

forfeited and FHB received the down payment when the purchaser

failed to close the sale. Id. Furthermore, the ICA also

concluded that, while FHB was entitled to damages in excess of

22

the forfeited down payment for fees and costs attributable to the failure to close the sale, "the circuit court improperly awarded damages [(i.e., per diem interest, etc.)] to FHB based on [the mortgagor's] underlying loan obligation to FHB to which [the third-party purchaser] was not a party." Id. at 363, 31 P.3d at 220. Likewise in the present case, while it would be appropriate for OneWest to "recover" the forfeited down payment by applying the amount to reduce Brown's debt as a penalty for its failure to close the sale, it would not be appropriate to award the forfeited down payment as damages to the Association based on Brown's underlying obligations to the Association to which OneWest was not a party, particularly when OneWest is the senior lienholder.[5]

## IV. CONCLUSION

In the ICA's judgment on appeal, it struck paragraphs e, g, and 9 from the circuit court's September 22, 2015 order on OneWest's motion for HRCP Rule 60(b) relief. Although we hold that the ICA erred in striking those paragraphs for the reasons stated in its amended summary disposition order, we find that the circuit court's award of the forfeited down payment as

---

[5] Our holding does not affect the Association's ability to recover, in whole or in part, on its lien of $116,011.95 if a sufficient price for the mortgaged property is obtained at a subsequent foreclosure auction, nor does it invalidate the sanctions imposed for OneWest's lack of diligence in the circuit court's July 24, 2015 order.

damages to the Association was an abuse of its discretion. Thus, only paragraph 9 of the circuit court's September 22, 2015 order should have been stricken, and the case should have been remanded to the circuit court for proper disposition of the down payment amount.

For the foregoing reasons, we affirm in part and vacate in part the ICA's June 22, 2018 Amended Summary Disposition Order and September 11, 2018 Judgment on Appeal, and remand the case to the Circuit Court of the Third Circuit for further proceedings consistent with this opinion.

| | |
|---|---|
| Cid H. Inouye | /s/ Mark E. Recktenwald |
| Kristi L. Arakaki | |
| for Petitioner | /s/ Paula A. Nakayama |
| | |
| Charles R. Prather | /s/ Sabrina S. McKenna |
| Peter T. Stone | |
| for Respondent | /s/ Richard W. Pollack |
| OneWest Bank, F.S.B. | |
| | /s/ Michael D. Wilson |

